401 So.2d 1372 (1981)
Mary M. MAHAFFEY, Appellant,
v.
James W. MAHAFFEY, Appellee.
No. 80-781.
District Court of Appeal of Florida, Fifth District.
August 12, 1981.
D. Arthur Yergey of Yergey & Yergey, Orlando, for appellant.
George E. Adams of Adams & Hill, Orlando, for appellee.
SHARP, Judge.
The parties appeal from a final judgment of dissolution. The former husband urges the trial court erred in awarding the wife: (1) $200,000 lump sum alimony, (2) the use and possession of the marital home during the minority of the two children in the wife's custody and allowing her to recoup on sale of the home, one-half of the mortgage, taxes, insurance, maintenance and upkeep on the house, (3) $1,100 per month permanent alimony, and (4) $15,000 towards payment of the wife's attorney's fees. The *1373 wife argues the trial court erred by: (1) failing to award a larger amount of lump sum alimony and in not making it payable at a definite time and in definite amounts, and (2) failing to grant her a $20,000 special equity in the marital home. We affirm the judgment in all respects except the provisions for payment of the lump sum alimony, and we remand this proceeding to the trial court for reconsideration consistent with the views expressed in this opinion.
At the time of the dissolution the parties were in their early forties, and had been married for twenty years. They had four children and two were still minors: a boy eleven years old and a girl thirteen years old. The wife had been primarily a housewife during the marriage. Recently she began a small clothing business, which produced a small net income. From her family the wife inherited some funds and properties, and she owned one-half the marital home, which had been appraised at $225,000. Some $20,000 of her inherited funds were used to make part of the down payment on the marital home, and to remodel and furnish it. Her net assets totaled approximately $200,000.
She testified she needed in excess of $5,000 per month to maintain herself and the children in the lifestyle they enjoyed during the marriage. The husband had paid most of their living expenses, so she was uncertain about the accuracy of her financial affidavit. He testified their needs were only $2,090.00 per month.
The husband agreed there was no question he could pay a reasonable amount of alimony. He is a wealthy, successful apartment and real estate owner and developer. His net worth statement for 1979 totaled $1,441,782. Over the years, his net worth had steadily increased and the assets had been acquired during the marriage. In 1978 he paid $36,350 in federal income taxes and in 1979 he expected to pay $91,500. He estimated $72,000 as his tax bill for 1980.
Most of the husband's property consisted of his interests in some eighteen to twenty partnerships which owned, developed or managed apartments. In each case he held a minority percentage or interest in the partnership, and each partnership had restrictions on his right to sell or transfer his partnership interest. Three projects which were generating heavy taxes had been sold in the past two years. The husband testified that the forced sale of his business interests would cause him financial disaster. If forced to liquidate them, the taxes would reduce his net worth to only $472,000. At the trial the attorneys for both parties and a witness who was a C.P.A. agreed that the award of lump sum alimony to the wife of an interest in the partnership assets, would be a "taxable event" or "sale" to the husband. I.R.C. § 71(a) and (c)(1).
The lower court originally awarded the wife $800 per month in child support and $800 per month permanent periodic alimony. It also awarded her $400,000 in lump sum alimony payable in increments of one-half the net profit obtained by the husband on sale or liquidation of any partnership interest shown in his financial statement, or upon his death, whichever occurred first. On rehearing the court increased the permanent periodic alimony to $1,100 per month and reduced the lump sum alimony to $200,000. As did the prior judgment, the amended judgment required payment of the lump sum alimony in increments of one-half the net profit obtained by the husband upon sale or liquidation of a partnership interest or upon his death,[1] whichever occurred first. In any event, $100,000 of the $200,000 must be paid within five years.
The trial court's judgment should be upheld unless the conflicting party shows an abuse of discretion or lack of substantial evidence to support the ruling, or an error *1374 of law.[2] Most of this judgment accordingly must be affirmed:
(1) We find no error in awarding the wife exclusive possession and use of the marital home during the minority of the children in her custody or until she dies or remarries. This is a frequent provision is dissolution judgments and is generally deemed to be in part a discharge of the child support obligation of the non-custodial parent. Alford v. Alford, 364 So.2d 1255 (Fla. 2d DCA 1978); Singer v. Singer, 342 So.2d 861 (Fla. 1st DCA 1977); McNaughton v. McNaughton, 332 So.2d 673 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 424 (Fla. 1977). The requirement that the wife be given credit on sale of the house for one-half of the mortgage payments, taxes, insurance, maintenance and upkeep on the home is also a standard provision, perhaps required by the law of joint tenancy. Rubino v. Rubino, 372 So.2d 539 (Fla. 1st DCA 1979). See Power v. Power, 387 So.2d 546 (Fla. 5th DCA 1980). The inclusion of unlimited sums for "maintenance" and "upkeep" goes further than may be normally appropriate. However, in this case where the court chose not to recognize the wife's "special equity" in her $20,000 contribution to the home[3] under circumstances where such an award may have been permissible, this broader award is within the lower court's discretion.
(2) The amount set for permanent periodic alimony and its award are well within the trial court's discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).
(3) The record supports the award of attorney's fees to the wife. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Cummings v. Cummings, 330 So.2d 134 (Fla. 1976). The wife has no cash or liquid assets and her primary source of income is the periodic alimony awarded in this judgment.
(4) The amount of lump sum alimony awarded ($200,000) appears to us as also well within the trial court's discretion considering the nature of the husband's assets and the apparent tax consequences of their sale or other disposition.[4] Further, it is augmented by the award of substantial periodic alimony. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). The concept of "equitable distribution" does not require an equal division of the assets acquired during the marriage[5] between the parties although that is a good starting point in most cases.
Having determined that lump sum alimony of $200,000 is appropriate, the lower court should then have set a definite time and manner for its payment. Lump sum alimony may be payable in installments over a time period and it can be made up in whole or in part by cash or property.[6] However in this case, the provisions of the judgment are so contingent and vague as to when the payments are due, and the amount of the payments, it is entirely possible the wife will never receive the final $100,000 and she will probably have to wait the full five years to receive the first $100,000. Clearly it is unreasonable to require her to wait until her former husband dies to receive equitable distribution of her share of the marital assets. 27B C.J.S. Divorce § 250 (1959); See Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980).
*1375 We therefore remand this proceeding to the trial court to set a definite payment schedule for the lump sum alimony award. Codie v. Codie, 328 So.2d 863 (Fla. 2d DCA 1976). In all other respects the judgment is affirmed.
AFFIRMED in part, REVERSED in part and REMANDED.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] The judgment provides:

6. The Husband shall pay to the Wife lump sum alimony of $200,000 payable in the following manner:
a. The said $200,000 is to be paid in increments of one-half (1/2) of any net profit obtained by the Husband on any sale, transfer or liquidation or any partnership interest shown in the Financial Statement of the Husband dated October 22, 1979 and filed herein on March 7, 1980, or on the death of the Husband, whichever occurs first.
[2] Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980); Storer v. Storer, 353 So.2d 152 (Fla. 3d DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978); Bradley v. Bradley, 327 So.2d 253 (Fla. 4th DCA 1976); Ortiz v. Ortiz, 211 So.2d 243 (Fla. 3d DCA 1968).
[3] Landay v. Landay, 400 So.2d 43 (Fla. 2d DCA 1981).
[4] Yandell v. Yandell, 39 So.2d 554 (Fla. 1949).
[5] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[6] Halberstadt v. Halberstadt, 72 So.2d 810 (Fla. 1954); Reid v. Reid, 68 So.2d 821 (Fla. 1953); Caidin v. Caidin, 367 So.2d 248 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 765 (Fla. 1980); Storer v. Storer, 353 So.2d 152 (Fla. 3d DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978); Oritz v. Oritz, 211 So.2d 243 (Fla. 3d DCA 1968); Pollak v. Pollak, 196 So.2d 771 (Fla. 3d DCA 1967); Katz v. Katz, 159 So.2d 241 (Fla. 3d DCA), cert. denied, 166 So.2d 594 (Fla. 1964).