617 So.2d 732 (1993)
Patsy A. WHITE, Appellant,
v.
Forrest H. WHITE, Appellee.
No. 91-03589.
District Court of Appeal of Florida, Second District.
March 31, 1993.
Rehearing Denied May 5, 1993.
*733 Stevan T. Northcutt of Levine Hirsch, Segall & Northcutt, P.A., Tampa, for appellant.
Raymond A. Alley, Jr., of Raymond A. Alley, Jr., P.A., Tampa; and Tracy J. Robin of Akerman, Senterfitt & Eidson, P.A., Tampa, for appellee.
ALTENBERND, Judge.
Patsy A. White appeals a final judgment of dissolution of marriage. She challenges the trial court's equitable distribution of marital assets and its denial of alimony. We affirm the trial court's decision to enforce a 1979 prenuptial agreement executed in Michigan. Although the trial court's decisions concerning equitable distribution of marital property tend to favor the husband, there is substantial competent evidence to support those decisions and they are within the trial court's discretion. We conclude, however, that the trial court erred in denying alimony to the wife.
This marriage was not the first marriage for either Mr. or Mrs. White. When they married in 1979 in Michigan, Mr. White was forty-seven and was operating a successful recreational vehicle dealership. Mrs. White was thirty-six and worked in a physician's office. They each had minor children, who are now adults.
After they married, Mrs. White performed most of the domestic household labors. She also worked in her husband's business, functioning primarily as a book-keeper. Initially, she worked without compensation. Later she received minimum wage, and ultimately was paid $6 an hour in 1985.
In 1985, the couple moved to Florida and began a recreational vehicle dealership in Hillsborough County. In 1988 and 1989, their joint income for tax purposes exceeded $135,000. They had established a very comfortable, upper-middle class lifestyle.
The Whites separated in 1989 and the judgment of dissolution was subsequently entered in September 1991. Before the final hearing, Mrs. White had earned a junior college degree and obtained a real estate license. She was learning the real estate business, but had no listings and had made no sales. She believed she had the background and experience to run a recreational vehicle dealership.
The trial court denied alimony for several reasons. First and foremost, it decided the wife had waived alimony in the Michigan prenuptial agreement. Second, it found that she was healthy and employable. Third, it found that she had the funds and the ability to open a recreational vehicle dealership. Finally, it found that the husband did not have sufficient income to pay alimony without invading his nonmarital assets. We conclude that none of these reasons support the trial court's decision.
The prenuptial agreement is a lengthy, carefully written document. It contains personal financial statements establishing *734 that Mrs. White entered the marriage with $32,000 in net worth, and Mr. White entered with $799,333 in net worth. The most pertinent paragraph in the agreement is entitled, "Release of Property Rights and Distribution of Property." In that paragraph, Mrs. White (then Ms. Helms) released
any and all rights, claims, and interest she may have or acquire by reason of said forthcoming marriage, in and to the business and investment estate and property (whether real or personal) of [Mr.] White, now existing or thereafter acquired (excluding only such property as may then be owned jointly by [Mr.] White and [Ms.] Helms), including, by way of example and not of limitation, any business or investment assets acquired after the marriage from the earnings of [Mr.] White, any claim arising out of any appreciation to his estate and property, or any other right or claim that may otherwise be available under the laws of any jurisdiction that may now or hereafter be applicable.
Nowhere in the agreement do the parties use the word "alimony." Mrs. White never released any right of support. Without regard to whether this agreement is interpreted under Florida or Michigan law, we conclude that Mrs. White did not expressly waive her right to future support pursuant to the agreement. See Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962); Rinvelt v. Rinvelt, 190 Mich. App. 372, 475 N.W.2d 478 (1991). Given the important functions fulfilled by alimony for both the recipient and this state, we will not permit a prenuptial agreement to waive a right to alimony or support unless that waiver is unambiguously expressed in the agreement. See, e.g., The Florida Bar, Drafting Marriage Contracts in Florida § 2.27, para. 12 (2d ed. 1988) (for sample contracts expressly waiving rights to alimony). We do not interpret the catchall phrase, "or any other right or claim that may otherwise be available," as a clear waiver of alimony.
We suspect that the trial court would have reached a different conclusion but for its decision on the prenuptial agreement. Its remaining reasons for denying alimony are not sufficient. Mrs. White's health and prospects for appropriate employment are factors in determining the nature or extent of a proper award of alimony, but they are not reasons to deny all alimony to this middle-aged woman whose needs, in light of the marital standard of living, could not be met by her employment opportunities at the time of the trial court's decision. § 61.08(2), Fla. Stat. (1991); Morrill v. Morrill, 578 So.2d 53 (Fla. 2d DCA 1991); Bowen v. Bowen, 543 So.2d 1284 (Fla. 2d DCA 1989); Lanier v. Lanier, 594 So.2d 809 (Fla. 1st DCA 1992). This record contains no competent evidence that Mrs. White can obtain financing or otherwise has a realistic opportunity to begin a new recreational vehicle dealership.
Finally, we doubt that the record supports the finding that the husband, a sixty-year-old experienced businessman, lacks the income to pay any alimony. Even if it does, Mr. White received over $300,000 in marital assets, and has extensive non-marital assets as a result of the prenuptial agreement. The husband's income alone is not the test for determining ability to pay alimony. Firestone v. Firestone, 263 So.2d 223 (Fla. 1972); Chastain v. Chastain, 73 So.2d 66 (Fla. 1954); Fried v. Fried, 375 So.2d 46 (Fla. 2d DCA 1979). By statute, the trial court must consider several relevant factors, including but not limited to "the financial resources of each party, the non-marital and the marital assets and liabilities distributed to each." § 61.08(2)(d), Fla. Stat. (1991).
In reversing for an award of alimony, we do not compel the trial court to award any specific type or amount of alimony. The trial court should exercise its own discretion on remand to make these decisions.
Affirmed in part, reversed in part, and remanded for further proceedings.
RYDER, A.C.J., and DANAHY, J., concur.